CMR
3-18-16


~~SEALED~~
unsealed 3/24/16

FILED
MAR 18 2016
CLERK, U.S. DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA
BY_____ DEPUTY

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>vs.<br><br>AGUSTIN ENRIQUE CRUZ<br>aka Tinky | Magistrate's Case No. 16-MJ-8239<br><br>COMPLAINT FOR VIOLATION OF<br><br>21 U.S.C. 952, 960, 963 (Conspiracy to Import Controlled Substances; 21 U.S.C. 841, 846 (Conspiracy to Distribute Controlled Substances); 21 U.S.C. 856(a)(1) and 846 (Conspiracy to Maintain Drug Related Property); 18 U.S.C. 1956(h) and 1956(a)(1)(A)(i) (Conspiracy To Launder Money); 18 U.S.C. 555 and 2 (Construction, Financing and Use) |

The undersigned complainant being duly sworn states:

### COUNT ONE
### (Conspiracy To Import Controlled Substances)

Beginning at a date unknown and continuing up to and including March 18, 2016, within the Southern District of California, and elsewhere, defendant Agustin Enrique Cruz, aka Tinky, did knowingly and intentionally conspire with others to import controlled substances, to wit, marijuana, a Schedule I Controlled Substance, into the United States from a place outside thereof; in violation of Title 21, United States Code, Sections 952, 960 and 963.

I hereby attest and certify on 3-18-2016
That the foregoing document is a full, true and correct copy of the original on file in my office and in my legal custody.
CLERK, U.S. DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA
By_____ Deputy

## COUNT TWO
### (Conspiracy To Distribute Controlled Substances)

Beginning at a date unknown and continuing up to and including March 18, 2016, within the Southern District of California, and elsewhere, defendant Agustin Enrique Cruz, aka Tinky, did knowingly and intentionally conspire with others to distribute marijuana, a Schedule I Controlled Substance; in violation of Title 21, United States Code, Sections 841(a)(1) and 846.

## COUNT THREE
### (Conspiracy To Maintain Drug Related Premises)

Beginning at a date unknown, and continuing to March 18, 2016, within the Southern District of California, and elsewhere, defendant Agustin Enrique Cruz, aka Tinky, did knowingly and intentionally conspire with others, to maintain a location at 902 E. Third Street, Calexico, California, for the purpose of distributing marijuana, a Scheduled I Controlled Substance; in violation of Title 21, United States Code, Sections 856(a)(1) and 846.

## COUNT FOUR
### (Conspiracy To Launder Money)

Beginning at a date unknown and continuing up to and including March 18, 2016, within the Southern District of California and elsewhere, defendant Agustin Enrique Cruz, aka Tinky, did knowingly and intentionally conspire with others to knowingly conduct and attempt to conduct financial transactions, affecting interstate and foreign commerce, which involved the proceeds of specified unlawful activity, with the intent to promote the carrying on of specified unlawful activity and that while conducting and attempting to conduct such financial transactions, knew that the property involved in the financial transactions represented the proceeds of some form of unlawful activity; in violation of Title 18, United States Code, Section 1956(a)(1)(A)(i) and 1956(h).

## COUNT FIVE
### (Construction/Financing/Use of Tunnel)

Beginning at a date unknown and continuing to March 18, 2016, within the Southern District of California, and elsewhere, defendant defendant Agustin Enrique Cruz, aka Tinky, did knowingly and intentionally aid and abet the construction, financing, and use a cross-border tunnel located at to maintain a location at 902 E. Third Street, Calexico, California, that crossed the international border between the United States and Mexico, which was not an authorized tunnel or passage known by the Secretary of Homeland Security and subject to inspection by Immigration and Customs Enforcement; in violation of Title 18, United States Code, Sections 555 and 2.

And the complainant states that this complaint is based on the attached statement of facts, which is incorporated herein by reference.

_____
MATHEW PARKER
U.S. Homeland Security Investigations


Sworn to before me and subscribed in my presence, this 18 day of March, 2016 .

_____
THE HONORABLE PETER C. LEWIS
United States Magistrate Judge

## STATEMENT OF FACTS

I declare, under penalty of perjury, the following:

For the purposes of the statement of facts, the property located at 902 E. Third Street, Calexico, California (hereinafter referred to as "**Calexico Third Street Property**") includes the newly built residence that contains the exit point of the tunnel and only 300 yards from the border; (2) the a residence located at 1056 Horizon St., Calexico, California (hereinafter "**Horizon Residence**") is a nearby stash location for the tunnel organization; and (3) the warehouse at 260 Avenida Campillo, Suite A, Calexico, California (hereinafter "**Avenida Campillo Warehouse**") is another stash location. All three locations are in Calexico, California.

### Defendant Cruz Purchases of the Calexico Third Street Property
### Exit Point of Tunnel

During a federal Arizona Wiretap investigation, D.M. (hereinafter "DM" or "coconspirator #1") was tasked with looking for a property to serve as the exit point for the tunnel under construction in Mexicali, Mexico. Throughout November 2014 and December 2014, DM and Agustin Enrique Cruz, aka Tinky (hereinafter "defendant Cruz") traveled from Arizona to the Calexico area on multiple occasions. In January 2014, defendant Cruz and DM found the **Calexico Third Street Property** and subsequently finalized the purchase for $240,000. DM deposited approximately $10,000 by wire to secure the purchase for the **Calexico Third Street Property.** At the time of the sale, there was only a dilapidated warehouse on the **Calexico Third Street Property**.

On February 19, 2015, Cruz's bosses were intercepted talking about picking up money. The next day, DM travelled from Nogales, Arizona, to Los Angeles, California. While in Los Angeles, based on physical surveillance, DM met with an individual who gave her approximately $60,000 and DM returned to Nogales and purchased two cashier's check totaling $58,000, for the partial payment of the **Calexico Third Street Property**. Then, on February 27, 2015, based upon intercepted communications and

1

physical surveillance, DM returned to El Centro, California and delivered the two cashier's checks to the Chicago Title, the company handling the sale of the **Calexico Third Street Property.**

On March 12, 2015, DM arrived at a Peter Piper Pizza restaurant in Tucson, Arizona, where she met with several individuals and based on the intercepted calls, agents believe that DM received approximately $100,000 in bulk cash for the pending purchaser of the **Calexico Third Street Property.**

On April 17, 2015, DM traveled to a residence near Interstate 10 and Interstate 8 just south of Casa Grande, Arizona. Agents believe DM traveled to the residence at the direction of her boss I.A. (hereainfter "IA" or "coconspirator #2") for the purpose of picking up $90,000 in bulk cash.

On April 27, 2015, based on the wiretap and physical surveillance, Cruz and DM travelled together to El Centro, California, from Nogales, Arizona, where they met at the Chicago Title Company for the closing in connection with the **Calexico Third Street Property**. On May 18, 2015, agents retrieved a certified grant deed bearing document number 2015008128 from the Imperial County Clerk-Recorder's office for the **Calexico Third Street Property** which showed the transfer of the **Calexico Third Street Property** to Cruz and DM. On May 18, 2015, based on the wiretap, the coconspirators discussed their options regarding the transfer of title for the properties in Calexico, California to Cruz. The **Calexico Third Street Property** warehouse was transferred into Cruz's name on July 1, 2015, according to the Imperial County Recorder's office in El Centro, California.

### Construction of Residence (Served as Exit Point of Tunnel)

On June 18, 2015, based on the wiretap, the coconspirators discussed the funds needed to construct a house on the property at **Calexico Third Street Property.** Previous intercepts indicated that the tunnel organization wanted to modify and build a new

2

residence right next to the warehouse for the purpose of smuggling drugs through an underground cross-border tunnel.

On July 28, 2015, based on the wiretap, DM reported that the price for the renovation (addition of a new residence) at the **Calexico Third Street Property** would be approximately $86,000. On July 29, 2015, DM was directed to obtain a safe (size 50 centimeters by 50 centimeters) and explained that he wanted the contractor to leave a space this large in the residence's concrete slab. DM's boss suggested that the safe would be shown to the contractor to show how big the hole should be in the foundation. Agents believe that they told the contractor to build a floor safe in that size. The coconspirators intended to use that hole in the foundation at the tunnel's exit point.

On September 17, 2015, and September 26, 2015, agents observed Cruz and DM at the **Calexico Third Street Property**. Based on the wiretap, Cruz and DM traveled to Calexico to meet with the contractor at the **Calexico Third Street Property** to make payments for the construction of the new residence. On September 30, 2015, agents observed the concrete foundation for the residence had been completed.

On September 28, 2015, the coconspirators arranged for IA to meet with the contractor. Based on the wiretap, IA met with the contractor in Mexicali, Mexico to make a payment for the continued construction of the residence at the **Calexico Third Street Property**. The contractor was hired to build the new residence and demolish a portion of the warehouse at the **Calexico Third Street Property**.

Throughout October 2015 and November 2015, construction crews continued with the construction of the residence located at the **Calexico Third Street Property**. During November 2015, the exterior of the residence appeared to be completed. The residence was painted, driveway completed, and all windows and doors were installed. Construction crews also continued with the partial demolition of the existing warehouse at the **Calexico Third Street Property.**

On November 18, 2015, agents conducted surveillance of Cruz and DM in Calexico, California. Cruz and DM visited and inspected the residence at the **Calexico Third Street Property** which was under construction. DM then traveled to Mexicali, Mexico, while Cruz remained in the United States. Cruz received calls from DM asking him to pick her up after she re-entered the United States. Cruz appeared to be driving around in attempt to conduct counter-surveillance and agents terminated surveillance of Cruz prior to him picking up DM.

On November 20, 2015, based on the wiretap, DM and IA discussed making a payment to the contractor because they needed to take $13,650 to the contractor.

On December 1, 2015, agents conducted surveillance of Cruz, DM and other individual in Calexico and El Centro. Cruz was attempting to clear up a property title issue and pay property taxes in connection with the **Calexico Third Street Property**. DM reported to IA that the water and electricity had been turned on at residence located on the **Calexico Third Street Property**. On multiple occasions, Cruz was told to call the gas company in order to have the gas turned on at the residence.

**Defendant Cruz's Prepares For Tunnel To Become Operational Vehicles, Construction of Tunnel's Exit Point and Second Stash Location**

Following the completion of the newly constructed residence at the **Calexico Third Street Property**, agents intercepted a call on December 18, 2015, where Cruz was directed to meet a female at the fountain near the border. Cruz was instructed to take this female to the residence at the **Calexico Third Street Property**. On December 18, 2015, agents conducted surveillance of Cruz and a female walking from a location near the Calexico, California West Port of Entry to the **Calexico Third Street Property**. The female was later identified as Rosario Bejarano-Zepeda, aka Rosario, aka Ross, aka

4

Chayo, aka Diana (hereinafter "Bejarano") based on crossing history and photographs agents had previously obtained.

On December 21, 2015, agents conducted surveillance of Cruz and Bejarano as they made several trips between Calexico City Hall and the Imperial County building in El Centro, California. Based on the investigation, agents believe Cruz was attempting to clear up a property title issue for the **Calexico Third Street Property** and pay taxes on the property. Cruz and Bejarano also purchased the Blue Dodge Dakota that agents believe will be used in facilitating the transportation of narcotics. A release of liability was filed by the previous registered owner, listing Cruz as the purchaser of the vehicle.

On January 5, 2016, agents observed the Brown Buick parked at the residence at the **Calexico Third Street Property**. A query of the National Law Enforcement Telecommunications System (NLETS) on the license plate of the Buick revealed the registered owner to be Bertha Lidia Esquivel (hereinafter "Esquivel"). On January 7, 2016, a query of NLETS on the license plate of the Blue Dodge Dakota, previously purchased by Cruz, revealed the new registered owner to be Esquivel. Agents have observed both the Brown Buick and Blue Dodge Dakota at the residence at **Calexico Third Street Property.**

On January 19, 2016, agents observed a White Ford F-150 parked at **Calexico Third Street Property**. On January 22, 2016, the White Ford F-150 was also registered to Esquivel. On January 22, 2016, agents conducted surveillance of the White Ford F-150 after it departed from the **Calexico Third Street Property**. Agents observed Esquivel operating the White Ford F-150 with Cruz as a passenger.

On January 25, 2016, agents observed Cruz and a male standing outside the **Calexico Third Street Property**. Cruz and the male were standing near the Blue Dodge Dakota previously purchased on December 21, 2015 (the Dakota is currently registered to Esquivel). Agents observed what appeared to be a concrete saw being loaded into the

back of the Blue Dodge Dakota. The Blue Dodge Dakota then left the residence, occupied by Cruz, Bejarano, and other individual, and traveled to the Imperial Do it Center in El Centro, California.

On January 27, 2016, agents obtained a copy of a rental agreement from Imperial Do it Center regarding equipment rented in the name of Cruz on January 25, 2016. The rental agreement listed the equipment rented as a walk behind saw and a concrete blade. On the contract, Cruz provided his phone number as 520-257-9734, and provided the address of the **Calexico Third Street Property** as the address that the equipment was to be used.

On February 5, 2016, surveillance agents observed Bejarano leave the **Calexico Third Street Property** driving the White Ford F-150. Bejarano traveled to a store in Calexico, California and then drove to the **Horizon Residence**. Bejarano stayed at the **Horizon Residence** for approximately twenty minutes and then returned to the residence at the **Calexico Third Street Property**. Agents believe that this is the secondary stash house used by the tunnel organization to store narcotics smuggled through the tunnel inside the residence at the **Calexico Third Street Property.** It is common for tunnel organizations to use a secondary stash house.

At one point, DM and Cruz returned to Arizona, but during an intercepted call on February 21, 2016, DM and Cruz planned to return to the **Calexico Third Street Property** when the tunnel became operational.

### Cruz's Ongoing Involvement With Smuggling Through The Tunnel

Based on the investigation, the intercepted calls, and physical surveillance, agents believe that the coconspirators began smuggling narcotics through the tunnel on or after February 28, 2016 at the **Calexico Third Street Property.** During a court authorized wiretap over Cruz's phone, agents intercepted several calls where Cruz and his father are discussing the conditions inside the tunnel. Surveillance showed that the

6

tunnel became operational. Cruz was working inside the tunnel residence at the **Calexico Third Street Property.**

Over the next few days, multiple vehicles are used to transport narcotics from **Calexico Third Street Property** to the **Horizon Residence.** They stop at the swap meet to switch drivers. Agents also believe that drivers were switched at the swap meet so that the drivers taking the drugs to the **Horizon Residence** were not aware of the original stash location at **Calexico Third Street Property** – this is common in tunnel investigations for the coconspirators to compartmentalize their activities from the smuggling crew, the transportation crew and the distribution crew.

On March 4, 2016, a White Cargo Van backed into the garage of the **Horizon Residence** and left – then a Red Dodge Ram appeared and drove in tandem with the White Cargo Van. Eventually, the White Cargo Van and the Red Dodge Ram arrive at the **Avenida Warehouse.** The White Cargo Van entered the warehouse at **Avenida Warehouse** through a large bay door while the Red Dodge Ram parked in the rear parking lot of the warehouse. The driver of the Red Dodge Ram was observed entering Suite A through a side door. At approximately 1416 hours, agents observed a male and female enter the Brown Buick and depart from the **Avenida Warehouse.** Agents believe that the drugs stored at **Horizon Residence** were transported to the **Avenida Warehouse** by the White Cargo Van and that the Red Dodge Ram was possibly conducting counter-surveillance, which is common when drugs are being transported from one location to another location, and was being used to guide the driver of the White Cargo Van to the warehouse location at **Avenida Warehouse.**

The next day, on March 5, 2016, a burgundy Freightliner tractor, bearing CA license plate WP52347, towing a cargo trailer, bearing CA license plate 4JX3399 (hereinafter "Burgundy Tractor-Trailer"), arrived at the **Avenida Warehouse.** The Burgundy Tractor-Trailer was backed up to the third loading dock from the west side of

the warehouse. Agents observed multiple pallets of boxes being loaded into the trailer and the Burgundy Tractor-Trailer soon departed the **Avenida Warehouse**. Agents maintained continuous surveillance of the Burgundy Tractor-Trailer until it parked at a truck lot located at 4720 U.S. Highway 111, Brawley, California.

The next day, on March 6, 2016, that Burgundy Tractor-Trailer moved from the truck lot in Brawley, California to a warehouse in Los Angeles, California. The truck driver dropped off the pallets. The owner of the facility granted consent to inspect the palletized cargo that was unloaded from the Burgundy Tractor-Trailer. Agents observed multiple bundles of marijuana commingled with other bundles of rotten produce. The marijuana weighed approximately 1,350 pounds.

Days following the seizure, from March 7, 2016, surveillance agents have observed little activity at all three locations. This is common following a large seizure of drugs by the drug trafficking organization – they are attempting to determine if their locations are compromised or the whereabouts of any problems or issues in their smuggling, transportation, and distribution network.

But, the ongoing federal wiretap of Cruz's phone, show that Cruz was directed to scout the area in and around the **Calexico Third Street Property** location. That property is located approximately 300 yards from the international border. Agents also believe that the conspirators do not believe that their locations are compromised because there has been no overt law enforcement activity at the three locations, so they will continue their smuggling activity through the tunnel.

Indeed, from March 10 to March 15, 2016, the coconspirators arranged to build a new wooden fence on the east side and west side of the residence, perhaps to block any view from the street. In addition, they built a chain-link fence on the south side of the residence – the chain-link fence (as opposed to a wooden fence) would allow visual

1 | access of the alley way, in case there are any surveillance units driving by the alley way.

MATHEW PARKER, SPECIAL AGENT
HOMELAND SECURITY INVESTIGATIONS

Subscribed to and sworn to
Before me this 18th, of March, 2016.

THE HONORABLE PETER LEWIS
UNITED STATES MAGISTRATE JUDGE

9